1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11   JULIANNE McCLOSKEY,                )   Case No.  CV 15-5223-SP
                                        )
12              Plaintiff,              )
                                        )
13        v.                            )   MEMORANDUM OPINION AND
                                        )   ORDER
14   CAROLYN W. COLVIN, Acting          )
     Commissioner of Social Security    )
15   Administration,                    )
                                        )
16              Defendant.              )
                                        )
17   _____)

18                                  **I.**

19                            **INTRODUCTION**

20        On July 10, 2015, plaintiff Julianne McCloskey filed a complaint against the

21   Commissioner of the Social Security Administration ("Commissioner"), seeking a

22   review of a denial of a period of disability and disability insurance benefits

23   ("DIB").  Both plaintiff and defendant have consented to proceed for all purposes

24   before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court

25   deems the matter suitable for adjudication without oral argument.

26        Plaintiff presents four issue for decision: (1) whether the administrative law

27   judge ("ALJ") properly considered the opinions of certain physicians; (2) whether

28

                                         1

1  the ALJ properly considered plaintiff's credibility; (3) whether the ALJ erred when

2  he determined plaintiff's impairments did not medically equal Listing 11.14; and

3  (4) whether the ALJ erred in his residual functional capacity ("RFC") assessment.

4  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-22;

5  Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-21; Plaintiff's

6  Reply ("Reply") at 1-12.

7         Having carefully studied the parties' papers, the Administrative Record

8  ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein,

9  although the ALJ properly considered the Listings at step three, he failed to

10 properly consider the opinions of plaintiff's physicians, and failed to develop the

11 record as directed by the Appeals Council.  Additionally, the court finds these

12 errors may have adversely impacted the both ALJ's credibility determination and

13 RFC determination.  The court therefore remands this matter to the Commissioner

14 in accordance with the principles and instructions enunciated in this Memorandum

15 Opinion and Order.

16                                    **II.**

17                    **FACTUAL AND PROCEDURAL BACKGROUND**

18        Plaintiff, who was thirty-seven years old on her alleged disability onset date,

19 is a high school graduate who completed three years of college and has

20 certifications as a child abuse prevention trainer and a parent educator.  AR at 69,

21 105, 286, 361, 365.   She has past relevant work as a trainer and as a social services

22 coordinator. *Id.* at 70, 90-91, 131-32, 365, 377-79, .

23        On May 24, 2010, plaintiff filed an application for a period of disability and

24 DIB due to Complex Regional Pain Syndrome and depression.  *Id.* at 127, 134,

25 286-87, 364.  The Commissioner denied plaintiff's application initially and upon

26 reconsideration, after which she filed a request for a hearing.  *Id.* at 163-74.

27        On July 6, 2011, plaintiff appeared pro se and testified at a hearing before

28

ALJ Sherwin F. Biesman. *Id.* at 102-26.  On September 19, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 141-48.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 153-55.  Thereafter, plaintiff retained counsel and filed a request to reopen the decision or in the alternative for an extension of time to file a civil action. *Id.* at 204-07.  On October 15, 2012, the Appeals Council set aside its denial of plaintiff's request for review. *Id.* at 208-09.

On November 29, 2012, the Appeals Council remanded plaintiff's case. *Id.* at 157-61.  Finding the ALJ failed to "recognize complex regional pain syndrome (CRPS) as a severe impairment" and failed to evaluate plaintiff's extreme obesity, the Appeals Council issued an order directing the ALJ upon remand to:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513).  As warranted and available, obtain evidence from a medical expert to clarify the nature and severity of the claimant's complex regional pain syndrome (20 CFR 404.1527 and Social Security Ruling 96-6p).
- Further evaluate the nature, severity and limiting effects of CRPS pursuant to Social Security Ruling 03-2p.
- Evaluate the nature, severity and limiting effects of obesity pursuant to Social Security Ruling 02-1p.
- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security

Ruling 96-8p).

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and Social Security Ruling 96-7p.

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.

*Id.* at 160-61. The ALJ was additionally directed to provide plaintiff "an opportunity for a hearing, [and to] take any further action needed to complete the administrative record and issue a new decision." *Id.* at 161.

On September 9, 2013, plaintiff represented by counsel, appeared and testified at a hearing before ALJ John Wojciechowski. *Id.* at 68-89, 93-95, 99-100. The ALJ also heard testimony from vocational expert ("VE") Barbara Misick. *Id.* at 89-99. On November 1, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 2, 2009, the alleged onset date. *Id.* at 19.

At step two, the ALJ found plaintiff suffered from the following severe impairments: chronic pain syndrome, complex regional pain syndrome ("CRPS"), obesity, regional peripheral neuropathy, depression, bilateral carpal tunnel syndrome status post bilateral release. *Id.* at 20.

At step three, the ALJ found plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments set

forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* The ALJ specifically considered Listings 1.02 and 12.04, in combination with plaintiff's obesity and in light of plaintiff's CRPS. *Id.* at 20-21. The ALJ found plaintiff's impairments do not meet or medically equal "any pertinent listing." *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could: frequently climb ramps and stairs, balance, stoop, crouch, crawl, and kneel; no more than occasionally climb ladders, ropes, and scaffolds; and perform frequent handling and fingering. *Id.* at 21. The ALJ also determined that plaintiff was limited to simple, repetitive tasks with no more than occasional contact with the public, coworkers, and supervisors. *Id.*

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work. *Id.* at 28.

At step five, the ALJ found there were jobs that exist in significant numbers in the national economy plaintiff could perform, including advertising material distributor and laundry sorter. *Id.* at 29. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 30.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4, 12. The ALJ's decision stands as the final decision of the Commissioner.

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

## DISCUSSION

### A.  The ALJ Failed to Properly Consider Physicians' Opinions

Plaintiff argues the ALJ failed to properly consider the opinions of two CRPS experts who examined plaintiff as part of her ongoing litigation against her health insurance provider, and erred in giving great weight to the State Agency examiners who only reviewed plaintiff's medical records through 2010.  P. Mem. at 5-10; Reply at 1-5.  Plaintiff contends the ALJ improperly discounted the opinions of  Dr. Edward A. Smith and Dr. Steven Feinberg based only on the context in which the examinations were sought, and without providing any independent specific and legitimate reasons.  P. Mem. at 5-8.  Plaintiff further contends evidence in the record acquired after 2010 undermines the agency consultants' contradictory conclusions.  *Id.* at 8-10.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.

*Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Here, although the ALJ determined plaintiff's Complex Regional Pain Syndrome to be a severe impairment, as directed upon remand by the Appeals Council, he unreasonably discounted nearly all the evidence related to CRPS, including the findings of both medical experts who confirmed the diagnosis.  AR at 22-28.  The ALJ concluded that "physicians appeared to have difficulty pinpointing a diagnosis" (*id.* at 24), "[t]he only constant in [plaintiff]'s allegations were its inconsistencies" (*id.*), plaintiff's "clinical reactions appeared to worsen dramatically during the course" of one expert examination (*id.* at 25), and "definitive clinical tests failed to support [plaintiff]'s extensive allegations of ongoing symptomatology."  *Id.* at 25.

The Commissioner recognizes some impairments do not manifest in a standard way and cannot easily be diagnosed or evaluated using standard diagnostic tools.  CRPS is such an impairment.  The Commissioner states:

> It may be noted in the treatment records that [] signs [associated with CRPS] are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are

1    characteristic of RSDS/CRPS . . . . [¶¶]  It should be noted that
2    conflicting evidence in the medical record is not unusual in cases of
3    RSDS due to the transitory nature of its objective findings and the
4    complicated diagnostic process involved.  Clarification of any such
5    conflicts in the medical evidence should be sought first from the
6    individual's treating or other medical sources.

7    Social Security Ruling ("SSR") 03-2p.[2]

8            When an ALJ is uncertain about the clinical findings related to CRPS or "the
9    evidence is inadequate to determine whether the individual is disabled," the
10   Commissioner specifically directs the ALJ to "first recontact the individual's
11   treating or other medical source(s) to determine whether the additional information
12   needed is readily available," and if such information is not, the ALJ should
13   "arrange for a consultative examination(s)."  *Id.*  Here, the ALJ neither contacted
14   plaintiff's treating physicians nor ordered any additional consultative examination,
15   review of the complete records, or expert testimony.  Instead, the ALJ relied on the
16   findings of agency experts, all of which were made prior to ALJ Biesman's 2011
17   original denial of benefits, and none of which included evidence of plaintiff's
18   CRPS found in the record after 2010.  *See* AR at 28 (giving great weight to agency
19   medical opinions and discounting the "two supposedly comprehensive
20   examinations" by plaintiff's CRPS experts); *see also id.* at 824-38 (Dr. S.
21   Jacobson, July 8, 2010 Report), 841-46 (Dr. Michael S. Wallack, July 29, 2010
22   Report), 849-58 (Dr. G. Jansen, August 10, 2010 Report), 912-13 (Dr. F.L.

23   _____

24        [2]  "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.  SSRs are binding on all
25   components of the SSA.  SSRs do not have the force of law.  However, because
     they represent the Commissioner's interpretation of the agency's regulations, we
26   give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th
27   Cir. 2001) (internal citations omitted).
28

1   Williams, December 10, 2010 Report).

2         Defendant first argues the ALJ rejected the opinions of Dr. Smith and Dr.

3   Feinberg because they relied primarily on plaintiff's subjective complaints.  D.

4   Mem. at 4-5, 7; *see* AR at 25-27.  But as the Commissioner states, "[t]he most

5   common acute clinical manifestations [of CRPS] include complaints of intense

6   pain . . . . out of proportion to the severity of the injury sustained."  SSR 03-2p.

7   Notwithstanding the ALJ's credibility determination, which this court finds was

8   negatively impacted by the ALJ's failure to properly consider the medical evidence

9   or further develop the record as directed by the Appeals Council, under the instant

10  circumstances this is not a specific and legitimate reasons supported by substantial

11  evidence for rejecting these opinions.  *See Hunt v. Astrue*, 2009 WL 1519543, at *5

12  (C.D. Cal. May 29, 2009) (explaining "CRPS is a disease diagnosed primarily

13  based on subjective complaints, and the absence of 'objective medical evidence,'

14  such as x-rays or laboratory tests, cannot be cited as a legitimate basis for"

15  discounting information provided by plaintiff).

16        Defendant next argues the ALJ found the doctors' reports contained internal

17  inconsistences.  D. Mem. at 3-4, 7; *see* AR at 25 (indicating plaintiff's pain seemed

18  to "worsen dramatically over the course of the exam" and recounting all the

19  negative tests that fail to substantiate plaintiff's alleged pain), 27 (noting Dr.

20  Feinberg based his opinion on plaintiff's observed dragging of her foot, but finding

21  no observable physical problem with the limb).  But neither doctor's report

22  substantiates the conclusion drawn by the ALJ, as both diagnose CRPS, which

23  specifically manifests under apparent conflicting physical test results (SSR 03-2p),

24  and neither doctor found inconsistencies in plaintiff's presentation.  *See* AR at

25  1363 (describing plaintiff as "pleasant and cooperative" and diagnosing her with

26  Complex Regional Pain Syndrome II), 1642 (finding plaintiff "is an excellent

27  historian"), 1652 (reporting twice that "several breaks were taken during the

28

physical examination at [the doctor's] discretion, not the patients request, in order to allow her pain level to subside"), 1654 (concluding plaintiff "meets the criteria for complex regional pain disorder").  This reason also falls short of the specific and legitimate standard required to discount plaintiff's examining physicians' opinions.

Defendant also argues the ALJ cited the activities of daily living reported by plaintiff at her exams as undermining her claims of pain, its effect on her gait, and side effects from medication, and as thus undermining the doctors' opinions.  D. Mem. at 5; *see* AR at 26.  But plaintiffs reported activities – such as using games and televison as distractions to cope with the pain and facilitate sleep; doing some household chores, including making breakfast for her two children, doing laundry daily, cooking twice per week, driving a few times per week, and changing diapers – must be viewed in conjunction with her assertions that she rests for an extended period daily, her husband and mother consistently help with the household chores, and her medications affect her ability to focus.  *See* AR at 69, 77-79, 81-84, 1358, 1650.  In this context, plaintiff's minimal activities of daily living undertaken with significant assistance are not a specific and legitimate reason upon which to find plaintiff's physicians' expert opinions not credible.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) ("evidence that [plaintiff] could assist with some household chores was not determinative of disability"); *cf. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (discounting physician's assignment of extreme physical limitations, in part, due to plaintiff's ability to run a household and take care of two children without a husband or significant outside assistance).

Defendant finally argues the ALJ found both examinations unreliable because they were "performed in direct relation to her ongoing litigation."  D. Mem. at 5; *see* AR at 28 ("The evidence is highly suggestive that the claimant has a strong motive for secondary gain in this Social Security Disability application

1   and appeal.").  But the Ninth Circuit has made clear, "[t]he purpose for which

2   medical reports are obtained does not provide a legitimate basis for rejecting

3   them." *Lester*, 81 F.3d at 832.  "'The [Commissioner] may not assume that doctors

4   routinely lie in order to help their patients collect disability benefits.'"  *Id.* (citation

5   omitted); *see also Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)

6   (citation omitted) ("ALJ may not disregard a physician's medical opinion simply

7   because it was initially elicited in a state workers' compensation proceeding, or

8   because it is couched in the terminology used in such proceedings.").  And

9   although neither of these examining physicians were treating plaintiff, she was

10   ultimately diagnosed by her primary care physicians with CRPS and received

11   spinal lumbar block injections every three months as part of her ongoing treatment

12   for the condition.  *See* AR at 79, 1533, 1544, 1614, 1644.

13       Defendant additionally contends even "if evidence is susceptible of more

14   than one rational interpretation, the decision of the ALJ must be upheld."  *Lewis v.*

15   *Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) *see* D. Mem. at 1-2.  But when the

16   evidence is as ambiguous as that found in the records of the instant case, the

17   Commissioner has a duty to develop the record.  *See Webb v. Barnhart*, 433 F.3d

18   683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to

19   develop the record further "when there is ambiguous evidence or when the record

20   is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80 F.3d at

21   1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[] in

22   order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example,

23   by subpoenaing the physician[] or submitting further questions to [him or her].").

24   As noted above, the Commissioner emphasizes the importance of retaining a

25   medical expert or ordering a consultative examination when CRPS is indicated and

26   evidence in the record is inadequate.  SSR 03-2p; *see also* 20 C.F.R.

27   § 416.919a(a)-(b); AR at 160-61.  The ALJ's failure to develop the record is

28

12

especially harmful error where, as here, plaintiff's treating physicians are prohibited from providing "narrative reports or complet[ing] questionnaire forms" and thus provide only minimal information related to plaintiff's functional limitations. *Id.* at 451.

Plaintiff additionally argues evidence in the record undermines conclusions drawn by the agency physicians upon which the ALJ placed great weight. P. Mem. at 8-10; Reply at 5. Specifically, Dr. Jansen's August 2010 report found no evidence in the record that plaintiff "ever manifested superficial stigmata of [CRPS]." AR at 850-51; *see* SSR 03-2p ("RSDS/CRPS can be established in the presence of persistent complaints of pain . . . and one or more clinically documented signs in the affected region . . .: Swelling; Autonomic instability – seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh); Abnormal hair or nail growth (growth can be either too slow or too fast); Osteoporosis; or Involuntary movements of the affected region of the initial injury"). But during Dr. Smith's May 2011 examination, plaintiff exhibited "sever hyperathia in the anteromedial half of the proximal half of right thigh" and "[e]rythema of the medial middle third of the right thigh developed after the proactive measures of examination were performed." AR at 1653, 1655. These are superficial stigmata of CRPS.

In sum, the ALJ failed to provided specific and legitimate reasons supported by substantial evidence for giving little weight to plaintiff's examining physicians' opinions, and instead improperly gave greater weight to agency physician opinions rendered before the record was complete. Furthermore, the ALJ failed to develop the record as directed by the Appeals Council, and as warranted where the evidence is ambiguous and plaintiff's treating physicians policies prohibit reporting functional analyses. Accordingly, the ALJ erred in considering the

1  medical opinions.

2  **B.    The ALJ Did Not Err In His Step Three Determination**

3      Plaintiff also contends the ALJ erred at step three.  P. Mem. at 17-18; Reply

4  at 8.  Specifically, plaintiff argues her impairments, in combination, medically

5  equal Listing 11.14.  *Id.*  The court disagrees.

6      At step three, plaintiff has the burden of proving she meets or equals a

7  Listing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d

8  119 (1987).  To establish that an impairment is medically equivalent to a listed

9  impairment, it is the claimant's burden to show his or her impairment "is at least

10 equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §

11 416.926(a).  For an impairment or combination of impairments to equal a Listing,

12 the claimant "must present medical findings equal in severity to *all* the criteria for

13 the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531,

14 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds*

15 *as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *see* 20 C.F.R.

16 § 416.926(a)-(b); SSR 83-19 (an impairment is "equivalent" to a listing only if a

17 claimant's symptoms, signs, and laboratory findings are "at least equivalent in

18 severity" to the criteria for the listed impairment most like the claimant's

19 impairment).  A determination of medical equivalence must rest on objective

20 medical evidence.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) ("A

21 finding of equivalence must be based on medical evidence only.") (citing 20 C.F.R.

22 § 404.1529(d)(3)).

23     "RSDS/CRPS is not a listed impairment . . . . [h]owever, the specific

24 findings in each case should be compared to any pertinent listing to determine

25 whether medical equivalence may exist."  SSR 03-2p; *see* AR at 20.  To meet or

26 equal Listing 11.14 plaintiff must not only evidence peripheral neuropathies but

27 also "disorganization of motor function as described in 11.04(B), in spite of

28

1 prescribed treatment." 20 C.F.R. part 404, Subpart P, Appendix 1, § 11.14.

2 Paragraph B of Listing 11.04 requires "[s]ignificant and persistent disorganization

3 of motor function in two extremities, resulting in sustained disturbance of gross

4 and dexterous movements, or gait and station," and references Listing 11.00

5 paragraph C. *Id.* § 11.04(B).  Paragraph C further explains:

6 > Persistent disorganization of motor function in the form of paresis or

7 > paralysis, tremor or other involuntary movements, ataxia and sensory

8 > disturbances . . . which occur singly or in various combinations,

9 > frequently provides the sole or partial basis for decision in cases of

10 > neurological impairment. The assessment of impairment depends on

11 > the degree of interference with locomotion and/or interference with

12 > the use of fingers, hands, and arms.

13 Id. § 11.00(C).

14 The record does not indicate significant or persistent disorganization of any

15 of plaintiff's motor functions.  Plaintiff argues her difficulty walking equals

16 disorganization of motor function in both her legs and holding the cane affects the

17 use of her dominant hand when standing or walking, and thus her impairments

18 medically equal the Listing 11.14.  P. Mem at 18; Reply at 8.  There is evidence

19 plaintiff has some difficulty ambulating as a result of her neuropathy that could be

20 described as disorganization of motor function in plaintiff's right leg.  AR at 963,

21 1360, 1420-23, 1453, 1473, 1529, 1652.  But it is neither persistent nor affecting

22 two of plaintiff's extremities. *See id.* at 961 (reporting plaintiff does not use a

23 cane), 1527-28 (walking without cane after fall), 927, 1102, 1165-66, 1244, 1543

24 (recording gait as normal), 1529 (prescribing cane, but for use only "as needed").

25 Plaintiff's occasional use of a cane is not a persistent form of "paresis or paralysis,

26 tremor or other involuntary movements, ataxia and sensory disturbances," and even

27 if it causes her dominant hand to be "in use," such use does not constitute

28

1  "interference" or rise to the level of "sustained disturbance of gross and dexterous

2  movements" necessary to meet the Listing. 20 C.F.R. part 404, Subpart P,

3  Appendix 1, §§ 11.00(C), 11.04(B), 11.14.

4       Plaintiff had the burden to provide evidence that she met or equaled Listing

5  11.14, which she failed to do.  Substantial evidence supports the ALJ's conclusion

6  that plaintiff fails to meet the requirements of any pertinent listing.

7  **C.**     **Plaintiff's Credibility and RFC Claims**

8       In addition to the two issues discussed above, plaintiff also argues the ALJ

9  erred in discounting plaintiff's credibility, and erred in assessing plaintiff's RFC.

10  The court need not reach these issues because it finds the ALJ erred in his

11  consideration of plaintiff's physicians, and thus the court will remand the case as

12  discussed further below.  Moreover, the court declines to reach the issues of

13  plaintiff's credibility and RFC at this juncture, given the extent to which the ALJ's

14  failure to fully develop the record and consider the physicians' opinions likely

15  affected his assessment of plaintiff's credibility and RFC.

16  **V.**

17  **REMAND IS APPROPRIATE**

18       The decision whether to remand for further proceedings or reverse and

19  award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

20  888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

21  discretion to direct an immediate award of benefits where: "(1) the record has been

22  fully developed and further administrative proceedings would serve no useful

23  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

24  evidence, whether claimant testimony or medical opinions; and (3) if the

25  improperly discredited evidence were credited as true, the ALJ would be required

26  to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020

27  (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

28

instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, as set out above, remand is appropriate because there are outstanding issues that must be resolved before it can be determined whether plaintiff is disabled, including further development of the record.  On remand, the ALJ shall: (1) obtain additional evidence concerning plaintiff's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence, and as warranted, obtain evidence from a medical expert to clarify the nature and severity of plaintiff's complex regional pain syndrome (*see* 20 CFR §§ 404.1512-1513, 1527; SSR 96-6p; SSR 03-2p; SSR 02-1p); (2) reconsider the medical evidence and opinions in the record, and either credit the opinions of plaintiff's treating and examining physicians or give specific and legitimate reasons supported by substantial evidence for rejecting them; (3) reconsider plaintiff's subjective complaints regarding her CRPS, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it; (4) reassess plaintiff's RFC, specifically clarifying, as needed, limitations related to plaintiff's CRPS; and (5) proceed through steps four and five to determine what work, if any, plaintiff is capable of performing in light of her impairments.

**VI.**

**<u>CONCLUSION</u>**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: September 30, 2016     _____

SHERI PYM
United States Magistrate Judge

18